No. 23-11427

# In the United States Court of Appeals for the Eleventh Circuit

KEITH EDWARDS, AS GUARDIAN AND CONSERVATOR FOR JERRY BLASINGAME,

*Plaintiff-Appellant,*

v.

OFFICER J. GRUBBS, #6416, ET AL.,

*Defendant-Appellees.*

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:19-cv-02047 (Jones, J.)

## Brief of Appellees City of Atlanta and Officer J. Grubbs

James E. Dearing, Jr.
JAMES E. DEARING, JR., P.C.
1596 W. Cleveland Ave.
Suite 102
East Point, Georgia 30334
(404) 870-0010
jdearing@jed-law.com

Harold D. Melton
Charles E. Peeler
Elizabeth P. Waldbeser
TROUTMAN PEPPER
HAMILTON SANDERS, LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000
harold.melton@troutman.com
charles.peeler@troutman.com
elizabeth.waldbeser@troutman.com

*Counsel for Appellees City of Atlanta and Officer J. Grubbs*

# CERTIFICATE OF INTERESTED PERSONS

## No. 23-11427, *Keith Edwards v. Officer J. Grubbs, et al.*

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.

1.    Atlanta Police Department

2.    Blasingame, Jerry

3.    City of Atlanta

4.    Dearing Jr., James E.

5.    Eason, Kimberly D.

6.    Edwards, Keith

7.    Grubbs, Officer J.

8.    Hatchett, Ayanna D.

9.    Johnson, Vernon R.

10.    Jones, Hon. Steve C.

11.    Melton, Harold D.

12.    Peeler, Charles E.

13.    Tobin, Darren M.

14.    Waldbeser, Elizabeth P.

September 8, 2023                          s/ *Harold D. Melton*

                                          Harold D. Melton

                                          *Counsel for Appellees City of*
                                          *Atlanta and Officer J. Grubbs*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not request oral argument in this case. There is only one legal issue properly before the Court in this particular appeal, and it is straightforward. The facts and legal arguments are adequately presented in the briefs, and oral argument would not significantly aid the decision-making process.

# TABLE OF CONTENTS

Statement Regarding Oral Argument ..................................................... iii

Table of Contents ...........................................................................iv

Table of Authorities...........................................................................vi

Introduction.....................................................................................1

Jurisdictional Statement.....................................................................2

Statement of Issues ...........................................................................3

Statement of the Case ........................................................................4

I. Factual Background...........................................................................4

A. The underlying incident. ..................................................................4

B. Officer Grubbs' body camera usage during the incident. ...................7

C. The City's policies and training on body cameras............................8

II. Relevant Proceedings Below.............................................................10

A. Trial and Jury Verdict ..................................................................11

B. Post-trial motions and proceedings...............................................11

III. Standard                                                                          of
    Review ......................................................................................16

A. Motion for judgment as a matter of law...........................................16

B. Rule 60(b) motion........................................................................17

C. Attorneys' fees motion. .................................................................17

Summary of Argument.......................................................................18

Argument.........................................................................................20

I. The City was entitled to qualified immunity. ....................................20

II. Appellant failed to plead a claim for damages pursuant to
    O.C.G.A. § 42-5-2. ......................................................................27

III. Appellant's attorneys' fees arguments are not properly before this Court. .................................................................................... 29

Conclusion ....................................................................................... 32

Certificate of Compliance ............................................................... 33

Certificate of Service ...................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AcryliCon USA, LLC v. Silikal GMBH & Co.*,
  46 F.4th 1317 (11th Cir. 2022) .......................................................... 17

*Arthur v. Thomas*,
  739 F.3d 611 (11th Cir. 2014) ............................................................ 17

*Bd. Of Cnty. Comm'rs. of Bryan Cnty., Okl. v. Brown*,
  520 U.S. 397 (1997) ...................................................................... 23, 26

*Bradley v. Benton*,
  10 F.4th 1232 (11th Cir. 2021) .......................................................... 13

*City of Atlanta v. Mitcham*,
  296 Ga. 576 (2015) ............................................................................. 29

*Connick v. Thompson*,
  563 U.S. 51 (2011) ........................................................................ 18, 22

*Cooper v. Dillon*,
  403 F.3d 1208 (11th Cir. 2005) .......................................................... 21

*Ensley Branch, N.A.A.C.P. v. Seibels*,
  31 F.3d 1548 (11th Cir. 1994) ............................................................ 31

*Ga. Dep't of Labor v. RTT Assocs., Inc.*,
  299 Ga. 78 (2016) ............................................................................... 29

*Gilmere v. City of Atlanta, Ga.*,
  931 F.2d 811 (11th Cir. 1991) ............................................................ 31

*Gilmour v. Gates, McDonald & Co.*,
  382 F.3d 1312 (11th Cir. 2004) (per curiam) ................................ 27, 28

*Godfrey v. Ga. Interlocal Risk Mgmt. Agency*,
  290 Ga. 211 (2011) ............................................................................. 29

*Gold v. City of Miami*,
    151 F.3d 1346 (11th Cir. 1998)........................................................ 23

*Hurlbert v. St. Mary's Health Care Sys., Inc.*,
    439 F.3d 1286 (11th Cir. 2006)........................................................ 27

*McDowell v. Brown*,
    392 F.3d 1283 (11th Cir. 2004)............................................... 21, 24, 25

*MidlevelU, Inc. v. ACI Info. Grp.*,
    989 F.3d 1205 (11th Cir.), *cert. denied*, 141 S. Ct. 2863
    (2021)............................................................................................. 16

*Monell v. Department of Social Services of New York*,
    436 U.S. 658 (1974) ................................................................... 1, 20

*Montgomery v. Noga*,
    168 F.3d 1282 (11th Cir. 1999)........................................................ 17

*Pearson v. Kemp*,
    831 F. App'x 467 (11th Cir. 2020).................................................... 31

*Rafferty v. Denny's, Inc.*,
    13 F.4th 1166 (11th Cir. 2021) ....................................................... 27

*Scantland v. Jeffry Knight, Inc.*,
    721 F.3d 1308 (11th Cir. 2013)........................................................ 30

*Smith v. Psychiatric Sol'ns, Inc.*,
    750 F.3d 1253 (11th Cir. 2014)........................................................ 30

*Thosteson v. United States*,
    331 F.3d 1294 (11th Cir. 2003)........................................................ 17

*Underwood v. City of Bessemer*,
    11 F.4th 1317 (11th Cir. 2021) ....................................................... 21

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015)........................................................ 21

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
    846 F.3d 1159 (11th Cir. 2017).................................................. 17, 31

## INTRODUCTION

In this case, Officer Grubbs, a City of Atlanta police officer carrying out his routine duties, attempted to arrest Mr. Blasingame, who was panhandling by the side of the interstate. As Mr. Blasingame fled from Officer Grubbs, Officer Grubbs deployed his taser one time to stop Mr. Blasingame's flight. In a tragic and unforeseeable turn of events, Mr. Blasingame, who was running up a hill to escape from Officer Grubbs, rolled down the hill and into a metal utility box hidden from view at the base of the hill. Mr. Blasingame was left paralyzed.

After a full jury trial resulting in a verdict on Mr. Blasingame's behalf against Officer Grubbs and the City of Atlanta, the district court found that, as a matter of law, the City was not liable under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1974), but affirmed the verdict against Officer Grubbs. After a flurry of post-trial motions, Appellant—Mr. Blasingame's court-appointed guardian, Keith Edwards—filed this appeal. Appellant raises three arguments, but only one is properly before this Court: that the City did not properly train its officers on body camera usage, and that alleged failure to train caused Mr. Blasingame's physical injuries. As to that, Appellant's argument is

unsupported by both the law and the factual record, and this Court should affirm the district court.

## JURISDICTIONAL STATEMENT

The amended complaint, *see* Doc. 52, was filed pursuant to 42 U.S.C. § 1983, and the United States District Court for the Northern District of Georgia accordingly had jurisdiction under 28 U.S.C. § 1331.

This Court has jurisdiction over Appellant's challenge to the district court's order granting judgment as a matter of law on September 14, 2022 pursuant to 28 U.S.C. § 1291, because that order formally resolved all claims and entered judgment in favor of Mr. Blasingame and against Officer Grubbs in the amount of $40,000,000.[1] Doc. 177 at 36–37. The Court also has jurisdiction over Appellant's challenge to the district court's denial of its post-trial Rule 60(b) motion for relief under O.C.G.A. § 42-5-2 (Doc. 191) and motion for attorneys' fees (Doc. 186) because the

---

[1] In another appeal arising from Officer Grubbs' challenge to this same order, this Court requested briefing on whether the district court's order granting judgment as a matter of law, Doc. 177, is a final order under 28 U.S.C. § 1291, and carried the question with this case. *See* Order Carrying Jurisdictional Question with Appeal, *Edwards v. Grubbs, et al.*, No. 23-11427 (11th Cir. May 25, 2023). For the reasons articulated in Officer Grubbs' response to the Court's jurisdictional question, Appellees assert that the district court's order is a final judgment. *See* Appellant's Resp. to Jurisdictional Question, *Edwards v. Grubbs*, No. 22-13261 (11th Cir. Oct. 25, 2022).

district court's order denying those motions resolved all pending post-trial motions and was thus a final judgment pursuant to 28 U.S.C. § 1291. *See* Doc. 219.

Appellant timely filed his notice of appeal on April 27, 2023, in accordance with Federal Rule of Appellate Procedure 4(a)(1)(A). Doc. 226.

## STATEMENT OF ISSUES

1. Whether the district court properly held that Mr. Blasingame's injuries were not caused by the City's body camera usage policies;

2. Whether the district court properly denied Appellant's motion for relief from judgment under O.C.G.A. § 42-5-2 when Appellant did not plead any claim for medical expenses and did not make the required threshold showing of a waiver of sovereign immunity; and

3. Whether the amount of attorneys' fees Appellant sought below is properly before this Court.

## STATEMENT OF THE CASE

### I.    Factual Background

### A.    The underlying incident.

On the afternoon of July 10, 2018, Officer Grubbs and his partner, Officer Shelley, were driving in their patrol car near an on-ramp to Interstate 20 in Atlanta. Tr. 854:10–25. The officers noticed Mr. Blasingame, who appeared to be panhandling, standing on the shoulder of the highway on-ramp. Tr. 1086:20–25. Officer Grubbs decided to question Mr. Blasingame, and Officer Shelley stopped the patrol car across the street from Mr. Blasingame. Tr. 885:16–19; 1087:4–9.

Officer Grubbs got out of the car and crossed the busy roadway, approaching Mr. Blasingame to ascertain why he was standing on the highway ramp. Tr. 1087:4–9; 1048:21–25. When he saw Officer Grubbs, Mr. Blasingame turned and ran away on the shoulder of the highway ramp; Officer Grubbs followed him on foot. Tr. 1087:10–18. Officer Grubbs called after Mr. Blasingame to stop, but Mr. Blasingame continued to run away. Tr. 1051:11–18.

As Officer Grubbs got closer to Mr. Blasingame, Mr. Blasingame crossed over a roadside guardrail, so he was then on the side farthest away from where Officer Grubbs first saw him. Tr. 1054:3–11; Tr.

4

1051:23–1052:8. The area where Mr. Blasingame crossed over was extremely overgrown with shrubs and other vegetation and opened up to a downhill decline. Tr. 1056:3–6, 1075:10–13. At the bottom of the decline, out of Officer Grubbs' sight line, was a grassy area with a metal utility box that sat on a concrete pad. Tr. 538:23–539:5. On the other side of the grassy area and the utility box was another road near the interstate. Officer Grubbs could not see the utility box, but he was aware that the decline led downwards towards another road. Tr. 1089:4–12, 1090:16–1091:1.

While Mr. Blasingame was crossing over the guardrail, Officer Grubbs caught up with him and attempted to stop Mr. Blasingame. Tr. 1054:18–22. In response, Mr. Blasingame moved his arm backwards at Officer Grubbs in what Officer Grubbs later described as a "clearance strike." Tr. 1056:1–23. Mr. Blasingame did not make contact with Officer Grubbs or cause him to feel in physical danger, nor did he verbally respond to Officer Grubbs' instruction to stop. Tr. 1058:5–8; 1059:2–6.

Mr. Blasingame ran towards an opening in the brush. Tr. 1064:10–15. Officer Grubbs, concerned that Mr. Blasingame would flee into traffic on the road beyond the grassy area and potentially endanger himself and

drivers, drew and discharged his taser at Mr. Blasingame. Tr. 1068:10–1069:1. Officer Grubbs did not verbally warn Mr. Blasingame about the taser. Tr. 1066:6–10. The taser struck Mr. Blasingame, causing him to fall down the decline where he hit his head on the concrete base of the utility box in the grassy area. Tr. 538:23–539:5 (citing Ex. 39); 1075:14–1076:15. The fall caused Mr. Blasingame several fractured bones and significant bleeding. Tr. 1274:7–1275:4. This entire incident took place in 45 seconds or less. Tr. 1090:3–6.

After Mr. Blasingame fell, Officer Grubbs approached as Mr. Blasingame lay on the ground, breathing but unresponsive. Tr. 1076:25–1077:7; 1091:19–23. Over the next several minutes, Officer Grubbs used his radio to summon first responders to provide medical assistance, walked back to the roadway to inform Officer Shelley of what had occurred, went back to attend to Mr. Blasingame, and called a supervising officer by phone to report the incident. Tr. 1078:16–1081:12, 1091:17–1093:8. Shortly after, Mr. Blasingame was transported to a hospital where he was treated for his injuries. Tr. 1079:13–23.

### B. Officer Grubbs' body camera usage during the incident.

The body cameras used by APD at the time had four settings: off, on, event, and buffering. When a body camera is turned on, it goes into buffering mode. Tr. Tr. 174:8–10. A body camera is "buffering" when it records what is happening as it occurs, but every two minutes, the previous two minutes are erased and the next two minutes are captured. Tr. 464:19–465:05. When an officer presses the "event button," the body camera preserves the previous two minutes of buffering without audio, and then records the event being captured by the camera with audio. *Id*.; Tr. 256:14–19. If an officer turns off a body camera while it is buffering, the most recent buffer cycle is permanently erased. Tr. 179:10–15.

Officer Grubbs' camera was turned off for five minutes before he left for patrol with Officer Shelley. Tr. 243:20–244:09; *Id*. 1093:11–1094:02. The camera records show it alternated between buffering and event from when Officer Grubbs left on patrol, around 12:45 pm, until 2:36 pm, when it was turned off, then turned back on at 2:37 pm, and Officer Grubbs rapidly pressed the event button five times. Tr. 250:25–251:08; 252:03–20; 255:11–256:04; 465:15–21; Doc. 211-3 at 7.

Officer Grubbs testified that when he made his way to Mr. Blasingame at the bottom of the incline, he discovered his body camera was turned off and was not on and buffering. He turned it on at that time. Tr. 930:10–931:03. Officer Grubbs then pressed the event button multiple times to try and get his camera up as quickly as possible. Tr. 1093:11–1094:02. Because of this, there was no video of the incident. Tr. 262:12–18.

### C. The City's policies and training on body cameras.

The City's police officers began wearing body cameras in phases starting in late 2016. Tr. 148: 14–24. Soon after its officers began wearing body cameras, APD developed written policies for body cameras. *Id*. 148: 19–149:05. APD's standard operating procedures include guidelines for the proper use of body cameras, including when to record, how to use the camera, and the responsibility of sworn personnel for the camera's video files. *Id*. 149:13–22.; *see also* Doc. 211-7 (Pls. Ex. 26, APD Policy Manual SOP on body cameras).

Instructors from the body camera manufacturer trained APD officers on proper use in 2016. Tr. 151:03–20. Officers, including Officer

Grubbs, received an initial 4 hours of training when they received their cameras. *Id*. 157:08–15; Tr. 912:23–913:17.

Per APD's policies, officers are required to keep every video they record while wearing the body camera, and each recording must be tagged with a case number, must include metadata, and must be preserved according to a retention category based on the type of recording. Tr. 154:14–155:05. APD officers are trained not to turn off their cameras while the cameras are buffering because that could destroy evidence. *Id*. 179:16–180:04.

An audit of body camera usage by APD officers in December 2018 showed that from November 2017–May 2018 showed that nearly two-thirds of APD officers were not using their body cameras correctly. Tr.268:05–270:05. However, a witness testified that that number was likely inaccurate because the survey included calls where officers did not interact directly with the public, or situation responses where they would not be required to engage their body cameras, hence the lack of video. *Id*. 271:15–272:01; 293:12–296:18. Further, other officers had noted issues with accidentally turning their cameras off when they meant to turn them on, or cameras inadvertently toggling out of event mode. Tr.

964:21–965:08; 966:13–21. Appellant also presented expert evidence from two witnesses that, in their opinions, there "may be a culture" of overlooking or ignoring violations of body camera policy, Tr. 584:16–586:20, and that body cameras generally reduce excessive force incidents. Tr. 1118:19–1119:18.

Officer Grubbs was placed on administrative leave after the underlying incident, which was investigated by both APD and the Georgia Bureau of Investigation. Doc. 211-3 (APD investigation report); Doc. 211-6 at 48 (Georgia Bureau of Investigation incident investigation report). Officer Grubbs was later disciplined for his improper body camera usage in the underlying incident, Tr. 978:03–979:03, but APD reached no conclusion about whether Officer Grubbs violated its use of force policy. Doc. 211-3 at 57.

## II.    Relevant Proceedings Below

One year later, Mr. Blasingame sued Officer Grubbs and the City of Atlanta, bringing a claim under 42 U.S.C. § 1983 for an alleged violation of his Fourth Amendment rights against Officer Grubbs and the City of Atlanta. Doc. 1 at 5. After some initial discovery, Appellant[2] filed

---

[2] Mr. Blasingame was originally the named plaintiff in this action. After he filed the Amended Complaint, a state court in a related action found that he lacked sufficient

an Amended Complaint on Mr. Blasingame's behalf, bringing the same Section 1983 claims against Officer Grubbs and the City. Doc. 52. ¶¶ 29–38.

### A.  Trial and Jury Verdict

The jury found for Appellant and returned a $40 million verdict—$20 million in compensatory damages and $20 million in punitive damages—against Officer Grubbs. Doc. 163 at 1–2. The jury also returned a verdict of $60 million in compensatory damages against the City. *Id*. at 2.

### B.  Post-trial motions and proceedings

After the trial, Officer Grubbs and the City renewed their oral motions for judgment as a matter of law. Docs. 155, 176. The district court denied Officer Grubbs' motion and granted the City's motion. Doc. 177. As relevant here, the district court held that a reasonable jury could not have found that the City was liable under *Monell*. The trial court held that a reasonable jury could have found that Officer Grubbs used

---

capacity to make or communicate significant decisions about his own health and safety. *See generally* Doc. 113. Consequently, Keith Edwards was appointed as Mr. Blasingame's guardian and conservator, and the parties stipulated to Mr. Edwards' replacement of Mr. Blasingame as the named plaintiff. *Id*. For clarity, this brief will refer to Mr. Blasingame by name and Mr. Edwards as "Appellant."

excessive force against Mr. Blasingame, but that Appellant did not show that the City had a custom or policy of deliberate indifference towards Fourth Amendment rights to support his *Monell* claim. The trial court explained that the Atlanta Police Department ("APD") requires officers to undergo "extensive training concerning use of force, which includes training regarding the proper use of tasers." Doc. 177 at 18. Additionally, the trial court explained that APD maintains an official policy on proper taser usage that provides guidance about "where, when, and against whom an officer generally should not discharge tasers." *Id*. at 18–19.

Next, the trial court explained that, given the City's "adequate and reasonable official policies," Appellant had to show a "de facto or unofficial policy or custom that permitted officers to use excessive force, and specifically, tasers," in a way that caused Officer Grubbs to use excessive force against Mr. Blasingame. *Id*. at 19. However, Appellant did not provide evidence of "a widespread or pervasive practice" on use of force or tasers. *Id*. Further, there was no evidence that the City was on notice of improper taser use or acted with deliberate indifference toward improper taser use. *Id*. Finally, the audit of Officer Grubbs' actions in the

12

incident at issue "did not show how or why he discharged his taser, or whether his prior uses of [the] taser constituted excessive force." *Id.*

The trial court then addressed Appellant's other arguments in support of his *Monell* claim. It first explained that any delay in disciplinary proceedings against Officer Grubbs did not show a pattern sufficient to support a *Monell* claim. *Id.* at 20. Next, the trial court explained that, while Appellant presented conflicting evidence about whether the City properly trained officers on body camera usage and that discipline for body camera policy noncompliance was inconsistent, Appellant had not shown that any body camera policies or practices "*caused*" the alleged constitutional violation or injuries at issue. *Id.* at 20–21 (emphasis in original).

The district court next turned to Officer Grubbs' motion. It held that a reasonable jury could have found that Officer Grubbs used excessive force against Mr. Blasingame and thereby violated his Fourth Amendment rights. *Id.* at 30–32. The district court also held that Officer Grubbs' use of the taser was clearly established as a constitutional violation at the time it occurred, relying exclusively on this Court's decision in *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021). *Id.* at 32–

34. Officer Grubbs timely appealed from the district court's order. Doc. 178.

After Officer Grubbs filed his notice of appeal, this Court issued a jurisdictional question, and the parties submitted briefing in response. After that briefing was submitted, Appellant filed two Rule 60(b) motions seeking relief from the district court's order absolving the City from liability. Docs.187, 191. Consequently, this Court rescinded the briefing schedule on appeal until the district court resolved those pending motions. Memo. to Counsel or Parties, *Edwards v. Grubbs*, No. 22-13261 (11th Cir. Dec. 1, 2022).

As relevant here, Appellant moved for relief from the district court's judgment absolving the City of liability based on O.C.G.A. § 42-5-2. Doc. 191. Appellant argued that the City was liable for Mr. Blasingame's medical expenses from the time of his injury to the present because he was an "inmate" at the time of his injury and O.C.G.A. § 42-5-2 imposed a duty to pay for the medical expenses of inmates in its custody on the City. *Id*. at 9–12. Appellant also moved for attorneys' fees to be awarded to him and against Officer Grubbs as the prevailing party under 42 U.S.C. § 1988. Doc. 186.

14

The district court denied both post-trial motions. Doc. 219. As relevant here, it denied Appellant's motion for relief from judgment based on O.C.G.A. § 42-5-2 for two reasons. First, the district court held that Appellant waived any claim for damages under § 42-5-2 because he did not plead a claim under that statute. *Id*. at 12–14. The district court further explained that Appellant also did not add a claim under § 42-5-2 to his amended complaint, or even raise the issue until summary judgment, and as such, it would be "improper to find the City liable for a claim it did not know it was defending until [Appellant] filed his summary judgment motion." *Id*. at 14.

Second, the district court denied Appellant's motion because he did not carry his burden of showing that the City had waived sovereign immunity for the claim. *Id*. at 14–15. Under Georgia law, § 42-5-2 does not automatically waive sovereign immunity for municipalities, and Appellant agreed with that statement of law in his motion. *Id*.; *see also* Doc. 191 at 9 ("The [Supreme Court of Georgia] has confirmed 'that the care of inmates in the custody of a municipal corporation is a governmental function for which sovereign immunity has not been waived.'") (quoting *City of Atlanta v. Mitcham*, 296 Ga. 576, 576 (2015)).

The district court also addressed Appellant's motion for attorneys' fees. Doc. 219 at 5–6. It denied Appellant's motion as premature, stating that while "there is no doubt that [Appellant] was the prevailing party at trial," the judgment against Officer Grubbs and in Appellant's favor was on appeal and the outcome of the appeal could "impact exactly how successful [Appellant] has been in this case." *Id.* at 6. Accordingly, the district court "defer[ed] a final ruling on the attorneys' fees until the appeal has been completed" and denied Appellant's motion "with the understanding that it might be reraised." *Id.*

This appeal followed.

## III.  Standard of Review

### A.   Motion for judgment as a matter of law

This Court reviews "*de novo* a grant or denial of a judgment as a matter of law." *MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1214 (11th Cir.), *cert. denied*, 141 S. Ct. 2863 (2021) (citing *Thosteson v. United States*, 331 F.3d 1294, 1298 (11th Cir. 2003)). "In considering the sufficiency of the evidence that supports the jury's verdict," the Court reviews "the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the nonmoving party."

16

*Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999) (quotation omitted). However, the nonmoving party "must put forth more than a mere scintilla of evidence suggesting that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Thosteson*, 331 F.3d at 1298 (internal quotation marks omitted). Any legal determinations raised by the motion are reviewed *de novo*. *Montgomery*, 168 F.3d at 1289.

### B.  Rule 60(b) motion

This Court reviews "a district court's denial of a Rule 60(b) motion for an abuse of discretion." *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014) (quotation omitted). A "district court by definition abuses its discretion when it makes an error of law." *AcryliCon USA, LLC v. Silikal GMBH & Co.*, 46 F.4th 1317, 1324 (11th Cir. 2022) (quotation omitted).

### C.  Attorneys' fees motion.

This Court reviews "fees and costs awards under an abuse-of-discretion standard." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163 (11th Cir. 2017) (citation omitted). A district court abuses its discretion when it "commits a clear error of judgment, fails to follow the proper legal standard or process for making a determination, or relies on clearly erroneous findings of fact." *Id*. (citation omitted)

## SUMMARY OF ARGUMENT

First, the district court correctly held that, as a matter of law, the City was not liable for Officer Grubbs' actions under *Monell* because Appellant did not show that the City failed to train its officers on use of body cameras or that its body camera policies caused any injury to Mr. Blasingame or alleged violation of his Fourth Amendment rights. To succeed on his *Monell* claim, Appellant needed to show either "a pattern of similar constitutional violations by untrained employees," or that "the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation." *Connick v. Thompson*, 563 U.S. 51, 58, 63 (2011).

Appellant did not satisfy these elements through his evidence at trial. Imperfections in the City's body camera training are not the same as "deliberate indifference" toward officers' body camera usage. Nor did Appellant show an "obvious" need for the City to provide more or different training. There was no glaring omission in the City's body camera training that was obvious in the abstract. Finally, Appellant failed to show that Mr. Blasingame's physical injuries were a highly predictable consequence of the City's body camera training. Appellant did present

expert opinion testimony that, generally, proper body camera usage and training can reduce excessive force incidents, but did not examine data from APD (or any other police department) or conduct analytical research to connect Mr. Blasingame's injuries to body camera usage.

Second, Appellant's claim for medical expenses under O.C.G.A. § 42-5-2 was never properly pled, and the district court properly denied Appellant's request for relief from the judgment on that basis. Appellant's claim for medical expenses was raised for the first time at summary judgment and constituted an entirely new statutory basis for entitlement to relief. Accordingly, it was a new claim that should have been brought in an amended complaint. Appellant never amended his complaint to add this claim, so it is waived.

Finally, Appellant's request for specific amounts of attorneys' fees is not proper for this Court's review at this time. The district court did not award attorneys' fees to Appellant, but acknowledged that, while Appellant was the prevailing party at trial, it was premature to award attorneys' fees until the pending appeals were resolved. In so holding, the district court did not abuse its broad discretion to manage its docket, and Appellant does not assert that it did. Further, the amount of attorneys'

fees that Appellant may be entitled to if he succeeds on one of the two pending appeals is a factual determination that the district court must make first before this Court can review it. At most, this Court can determine whether Appellant is a "prevailing party" under 42 U.S.C. § 1988 after it resolves both pending appeals.

**ARGUMENT**

## I.  The City was entitled to qualified immunity.

The district court correctly held that, as a matter of law, the City was not liable for Officer Grubbs' actions under *Monell* because Appellant did not show that the City failed to train its officers on use of body cameras or that its body camera policies caused any injury or alleged violation of Mr. Blasingame's Fourth Amendment rights. [3]

In *Monell*, the United States Supreme Court held that a municipality can be liable under 42 U.S.C. § 1983 for injuries inflicted by its employees. 436 U.S. at 694. To succeed on a *Monell* claim, a plaintiff must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate

---

[3] Appellees assert that there has no violation of Mr. Blasingame's Fourth Amendment rights, but because that issue has been thoroughly briefed in the related appeal, they adopt those arguments by reference instead of re-briefing them here. *See* Appellant's Br. at 14–31, *Edwards v. Grubbs*, No. 22-13261 (11th Cir. July 26, 2023).

indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). To establish deliberate indifference, a "showing of simple or even heightened negligence is not enough." *McDowell*, 392 F.3d at 1291 (quotation omitted).

A policy is a "decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality," while a custom is "a practice that is so settled and permanent that it takes on the force of law." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (quotations omitted). "In limited circumstances, a local government's decision not to train employees . . . to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015) (quoting *Connick*, 563 U.S. 51). But to establish § 1983 liability via failure to train, a plaintiff must show "a pattern of similar constitutional violations by untrained employees," or that "the need for training was so

obvious that a municipality's failure to train its employees would result in a constitutional violation." *Connick*, 563 U.S. at 58, 63.

Appellant did not satisfy these elements through his evidence at trial and the district court correctly granted judgment as a matter of law. First, Appellant's evidence at trial did not show "deliberate indifference" toward officers' body camera usage. The evidence at trial showed that the City trained APD officers on how to use body cameras, although there was some inconsistent testimony on how well officers understood the nuances of the camera's mechanics. Tr. 915:06–916:02; *Id*. 964:21–965:08; 966:13–21; *Id*. 157:08–15; *Id*. 912:23–913:17. There was also evidence that officers were only using body cameras one third of the time required, but that evidence was mitigated with testimony about poorly constructed survey parameters and the learning curve of adjusting to new technology for the officers. Tr. 271:15–272:01; 293:12–296:18; *Id*. 964:21–965:08; 966:13–21. Taken together, this does not amount to deliberate indifference. The City was widely implementing a new form of technology that was less than two years old, was studying compliance and seeking to improve it, provided training on camera mechanics, and implemented written policies for camera usage.

Further, Appellant's evidence was insufficient as a matter of law to show an "obvious" need for the City to provide more or different training. This standard is extremely difficult to meet. The Supreme Court has only "hypothesized" that, "in a narrow range of circumstances," a plaintiff can show an obvious need for training without showing a pattern of constitutional violations: if a municipality were to provide firearms to officers without training them on the use of deadly force. *Gold v. City of Miami*, 151 F.3d 1346, 1352 (11th Cir. 1998) (quoting *Bd. Of Cnty. Comm'rs. of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409–10 (1997) and citing *City of Canton, Oh. v. Harris*, 489 U.S. 378, 390 n.10 (1989)). Unlike in that hypothetical scenario, there was no glaring omission in the City's body camera training. And further unlike the hypothetical scenario, cameras are not like guns and cannot be said to "cause" injuries in the same way. In short, the risk from the "possible imperfections, if any," in the City's training and supervision of its officers' body camera usage is "not obvious in the abstract." *Brown*, 520 U.S. at 410 (cleaned up).

Second, Appellant did not present evidence sufficient to prove that the City's body camera training caused Mr. Blasingame's physical

injuries. To establish causation, Appellant needed to show that Mr. Blasingame's physical injuries were a "highly predictable consequence" of the City's body camera training. *McDowell*, 392 F.3d at 1292. Appellant failed to make that showing with his evidence at trial. Instead, Appellant's evidence showed that the City trained its officers on body camera usage and that the City had studied the effectiveness of its trainings. It was not "highly predictable" that the City's training on body cameras would cause increased incidents of excessive force by APD officers or that it would cause Officer Grubbs to deploy a taser against Mr. Blasingame, or that doing so would lead to Mr. Blasingame's fall and injury from contact with the utility box. Appellant did present expert opinion testimony that, generally, proper body camera usage and training can reduce excessive force incidents but did not survey data or conduct analytical research to connect Mr. Blasingame's injuries to body camera usage by the City's officers generally or by Officer Grubbs in this specific situation.

The district court properly held that, even viewing the evidence in the light most favorable to Appellant, he did not present sufficient evidence to support a finding that the City's body camera policies caused

Mr. Blasingame's injuries. Doc. 177 at 20–21. Specifically, the court held that Appellant's experts, although they gave "broad, conclusory opinions that proper use of [body cameras] can reduce uses of excessive force," did not specifically link that broader opinion to APD's body camera usage and whether any failings increased uses of excessive force. *Id.* at 21. The district court concluded that there was a "fatal disconnect" between the City's body camera policies and the excessive force in this case. *Id.*

Appellant's arguments on appeal do not explain how he can overcome this "fatal disconnect." Appellant first asserts that the district court improperly required a history of constitutional violations by this holding, but that he was not required to make such a showing. Appellant's Br. at 31. This assertion misses the point. Appellant failed to connect his general evidence to increased excessive force incidents by APD officers or the specific incident at issue, as required to establish that that Mr. Blasingame's physical injuries were a "highly predictable consequence" of the City's body camera training. *McDowell*, 392 F.3d at 1292.

Appellant next asserts that he could have proved his theory with a single constitutional violation and argues that the district court ignored

that part of the jury instruction and legal analysis. Appellant's Br. at 32.
While the law does allow Appellant to establish *Monell* liability as a
result of failure to train in that way, Appellant still does not explain how
he showed the extremely narrow circumstances that could establish
*Monell* liability under this theory. He highlights no glaring omission from
the City's body camera training that was obvious in the abstract. *Brown*,
520 U.S. at 410.[4] And even if there were such an omission, Appellant still
fails to establish causation.

When Appellant finally does address causation, he merely asserts
that he produced expert testimony on causation, Appellant's Br. at 35,
and summarizes the testimony of his two expert witnesses. *Id*. at 35–36.
He then asserts that the district court's legal finding that he did not prove
causation was an improper finding on witness credibility. *Id*. at 36.
Appellant does not explain how the district court improperly weighed
credibility instead of making a legal conclusion, nor does he explain how

---

[4] Appellant also takes issue with the district court's commentary that no published, binding authority from this Court or the Supreme Court has found a municipality liable under *Monell* based on a similar theory of failure to train on body camera usage. Appellant's Br. at 32–35; Doc. 177 at 21–22. Appellant relies on decisions by district courts in other circuits to argue that his theory of *Monell* liability should be upheld here. Appellant's Br. at 33–35. Appellant does not engage with the district court's comment that Appellant's out of circuit precedent did not remedy his failure to establish a causal relationship.

his expert witnesses connected their general opinions to the specific incident at issue. As explained above, as a matter of law, he cannot do so, and this Court should affirm the district court.

## II. Appellant failed to plead a claim for damages pursuant to O.C.G.A. § 42-5-2.

The district court correctly denied Appellant's motion for relief from the judgment under O.C.G.A. § 42-5-2 for failure to sufficiently plead it as a separate claim for relief. Although Federal Rule of Civil Procedure 8(a) provides a liberal pleading standard, that standard "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1314 (11th Cir. 2004) (per curiam). Further, "a defendant is not required to infer all possible claims that could arise out of the facts set forth in the complaint." *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1194 (11th Cir. 2021). Allegations raise a new claim when they create a different theory of relief—here, an "additional, separate statutory basis for entitlement[.]" *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1297 (11th Cir. 2006). Thus, while a plaintiff may raise new facts to support an already pled claim at summary judgment, he cannot raise "an additional, separate statutory basis" for relief. *Id.*

Appellant's request for medical expenses under O.C.G.A. § 42-5-2 is a separate claim for relief, and yet was not raised in his original or amended complaint. It raises a new claim based on O.C.G.A. § 42-5-2, separate from Appellant's other claims, which seek relief under the federal Constitution and 42 U.S.C. § 1983. *See* Doc. 52 ¶¶ 29–47. Appellant did raise this claim at the summary-judgment stage, *see* Doc. 75, and the City pointed out his failure to plead it in the amended complaint. *See* Doc. 78 at 3–5. Raising a new claim at summary judgment is not the proper way to bring a new claim into an action. *Gilmour*, 382 F.3d at 1314. As Appellant did not properly bring his § 42-5-2 claim into this suit below, it is waived.

The district court correctly recognized Appellant's failure to properly plead a claim under O.C.G.A. § 42-5-2 and denied his Rule 60(b) motion for that reason. Doc. 219 at 13–14. Appellant offers no response to the district court's waiver analysis, but merely reiterates his arguments from below that Mr. Blasingame meets the criteria for relief under § 42-5-2. Appellant's Br. at 37–39. Accordingly, he has failed to

plead a claim under § 42-5-2 and the district court's denial of his rule 60(b) motion based on § 42-5-2 should be affirmed.[5]

## III. Appellant's attorneys' fees arguments are not properly before this Court.

Appellant's request for specific amounts of attorneys' fees is not proper for this Court's review at this time. The district court did not award attorneys' fees to Appellant, but acknowledged that, while Appellant was the prevailing party at trial, it was premature to award attorneys' fees until the pending appeals were resolved. Doc. 219 at 6. On appeal, Appellant does not argue that the district court abused its discretion by delaying a ruling on attorneys' fees, but instead argues that

---

[5] Alternatively, if this Court finds that Appellant has somehow properly pled his claim under O.C.G.A. § 42-5-2, the claim still fails because Appellant has not shown any waiver of sovereign immunity by the City. Absent an express, statutory waiver by the General Assembly, sovereign immunity protects municipalities from tort claims. *Godfrey v. Ga. Interlocal Risk Mgmt. Agency*, 290 Ga. 211, 214 (2011). A party seeking to overcome the sovereign-immunity hurdle has the burden to demonstrate a waiver. *Ga. Dep't of Labor v. RTT Assocs., Inc.*, 299 Ga. 78, 81 (2016). There is no statutory waiver for cost-of-care claims brought under § 42-5-2. *See Mitcham*, 296 Ga. at 576 (Under Georgia law, "the care of inmates in the custody of a municipal corporation is a governmental function for which sovereign immunity has not been waived[.]"). Appellant did not brief sovereign immunity below, and he does not do so on appeal. *See* Docs. 75 at 4–8, 191 at 9–12; Appellant's Br. at 37–39. Accordingly, he has not satisfied his burden of showing a waiver of sovereign immunity. The district court alternatively denied Appellant's Rule 60(b) motion for this reason, and this Court should affirm if it finds that Appellant properly pled his claim.

he is entitled to the full amount of attorneys' fees he requested below. Appellant's Br. at 42–52.

The district court did not abuse its discretion in reserving any award of attorneys' fees until after resolution of both pending appeals arising out of this case. District courts have "unquestionable authority to control their own dockets" and "broad discretion in deciding how to best manage the cases before them." *Smith v. Psychiatric Sol'ns, Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (quotations and citations omitted). Here, the district court determined that, as Appellant may no longer be the prevailing party after resolution of the pending appeals, it could best manage the case by allowing Appellant to re-file his motion at a later date. Doc. 219 at 5–6. This decision was part of the court's inherent authority to manage its own docket and was not an abuse of discretion. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1320 (11th Cir. 2013) (explaining that court of appeals reviews district court's decisions managing its own docket for an abuse of discretion and that where appellant did not challenge the district court's rationale for managing its docket, there was no abuse of the district court's "wide discretion.").

Even if Appellant is the prevailing party after resolution of both pending appeals, the amount of attorneys' fees that he may be entitled to under 42 U.S.C. § 1988 is not proper for this court to address in the first instance. Awards of attorneys' fees and costs are "essentially factual in nature" and as such, the district court is "in the best position to calculate such an award when appropriate." *Yellow Pages Photos, Inc*, 846 F.3d at 1163. Further, this court is a "court of review, not of first preview" and does not make factual determinations in the first instance in standard civil appeals. *Pearson v. Kemp*, 831 F. App'x 467, 470 (11th Cir. 2020) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 719 & n.7 (2005)); *see also Gilmere v. City of Atlanta, Ga.*, 931 F.2d 811, 814 (11th Cir. 1991) ("The district court, however, must explain its reasoning in determining a reasonable attorney's fee to give this court an adequate and informed basis for review."). At most, the Court can determine whether Appellant is a "prevailing party" under 42 U.S.C. § 1988 after it resolves both pending appeals. *See, e.g.*, *Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1582 (11th Cir. 1994) (deciding on appeal whether party requesting fees was prevailing party under 42 U.S.C. § 1988 and remanding for

district court to award amount of fees after district court denied motion for attorneys' fees for consideration at a later date).

## CONCLUSION

For the above reasons, this Court should affirm the district court and should not rule on Appellant's attorneys' fees arguments.

Respectfully submitted this 8th day of September, 2023.

*s/ James E. Dearing, Jr.*

James E. Dearing, Jr.
JAMES E. DEARING, JR., P.C.
1596 W. Cleveland Ave.
Suite 102
East Point, Georgia 30334
(404) 870-0010
jdearing@jed-law.com

s/ *Harold D. Melton*

Harold D. Melton
Charles E. Peeler
Elizabeth P. Waldbeser
TROUTMAN PEPPER
HAMILTON SANDERS, LLP
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000
harold.melton@troutman.com
charles.peeler@troutman.com
elizabeth.waldbeser@troutman.com

*Counsel for Appellees City of Atlanta and Officer J. Grubbs*

32

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,602 words, excluding the parts of the response exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word in Century Schoolbook 14-point font.

September 8, 2023                                          s/ *Harold D. Melton*
                                                                    Harold D. Melton

                                                                    *Counsel for Appellees City of*
                                                                    *Atlanta and Officer J. Grubbs*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on September 8, 2023. I served all counsel of record by CM/ECF.

September 8, 2023                              s/ *Harold D. Melton*

Harold D. Melton

*Counsel for Appellees City of Atlanta and Officer J. Grubbs*